UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN NORTHCUTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No.  1:14-cv-1291-WTL-TAB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff John Northcutt requests judicial review of the final decision of the Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Mr. Northcutt's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("the Act").  The Court rules as follows.

### I.     PROCEDURAL HISTORY

Mr. Northcutt protectively filed for SSI and DIB on June 23, 2011, alleging that he became disabled on March 16, 2007, primarily due to severe asthma, breathing impairments, gastro-esophageal reflux disease, anxiety, and supraventricular tachycardia.  Mr. Northcutt's application was denied initially on November 14, 2011, and again upon reconsideration on December 15, 2011.  Following the denial upon reconsideration, Mr. Northcutt requested and received a hearing in front of an Administrative Law Judge ("ALJ").  A video hearing, during which Mr. Northcutt was represented by counsel, was held by ALJ Romona Scales on November 14, 2012.  The ALJ issued her decision denying Mr. Northcutt's claim on March 28, 2013; the

Appeals Council denied Mr. Northcutt's request for review on June 6, 2014.  After the Appeals Council denied review of the ALJ's decision, Mr. Northcutt filed this timely appeal.

## II.   APPLICABLE STANDARD[1]

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).  At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d).  At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case.  For the sake of simplicity, this Entry contains citations to DIB sections only.

404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into [her] reasoning . . . [and] build an accurate and logical bridge from the evidence to [her] conclusion." *Dixon*, 270 F.3d at 1176.

### III.   EVIDENCE OF RECORD

The evidence of record is aptly set forth in the parties' briefs and need not be recited here. Specific facts are set forth in the discussion section below where relevant.

### IV.   THE ALJ'S DECISION

The ALJ determined at step one that Mr. Northcutt had not engaged in substantial gainful activity since March 16, 2007, the alleged onset date. At steps two and three, the ALJ concluded that Mr. Northcutt had the following severe impairments: asthma, gastroesophageal reflux disease, and supraventricular tachycardia. R. at 26. The ALJ found that his impairments, singly or in combination, did not meet or medically equal a listed impairment. At step four, the ALJ

determined that Mr. Northcutt had the residual functional capacity ("RFC") to perform work with the following restrictions:

> The claimant has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, and to sit, stand, and/or walk for up to 6 hours in an 8 hour work period. The claimant should avoid concentrated exposure to wetness and humidity, and he should avoid moderate exposure to pulmonary irritants such as dusts, fumes, odors, gasses, and areas of poor ventilation. Lastly, the claimant should avoid all exposure to extreme heat and cold.

*Id.* Given this RFC, the ALJ determined that Mr. Northcutt could not perform any of his past relevant work. Finally, at step five, the ALJ determined that he could perform a range of light, unskilled work that exists in the national and regional economy, including an usher and an assembler. *Id.* at 31. Accordingly, the ALJ concluded that Mr. Northcutt was not disabled as defined by the Act.

## V.   DISCUSSION

In his brief in support of his complaint, Mr. Northcutt presents two arguments: 1) the ALJ erred in her step three analysis by failing to address Listing 3.03; and 2) the ALJ erred in her credibility determination. The Court addresses his arguments below.

### A.  Listing 3.03

Mr. Northcutt first argues that the ALJ erred at step three when she failed to "properly consider[], whether Northcutt meets or equals Listing 3.03, which directly concerns Northcutt's primary medical condition of asthma." Pl.'s Br. at 10. Although Mr. Northcutt concedes that Dr. Faber "noted that Northcutt's condition did not meet the requisite FEV requirements of Listing 3.02, nor was there evidence to satisfy the requirements of Listing 4.05," Mr. Northcutt believes that the ALJ also should have solicited Dr. Faber's opinion whether he meets or equals Listing 3.03(B).

Mr. Northcutt argues that the ALJ erred in her Listing finding by failing even to mention Listing 3.03. The Seventh Circuit has cautioned that an ALJ should, at step three, cite the specific Listings she is considering, *see, e.g.*, *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (reversing in part because the ALJ failed to discuss or reference a Listing); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (noting that "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing"), although the ALJ's failure to do so does not require an automatic reversal. *Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004). Only where the record contains evidence that reasonably raises the question of whether a particular listing applies and the ALJ has failed to answer that question is remand required. *Id.*

Mr. Northcutt argues that there is evidence that suggests that he meets or medically equals subpart B of Listing 3.03. The requirements are as follows:

> B. Attacks (as defined in 3.00C) in spite of prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. Each in-patient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. 404 Subpt. P, App. 1 § 3.03(B). Listing 3.00C, in turn, defines "attacks of asthma" as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R. 404 Subpt. P, App. 1 § 3.00C.

Mr. Northcutt points to numerous occasions where he was treated for asthma, bronchitis, or pneumonia. However, merely seeing a doctor is not enough; the definition of "attack" requires the need for "intensive treatment." The Court has reviewed the relevant medical records and notes that there are several instances in which Mr. Northcutt received respiratory therapy

5

during an emergency room visit; the Court will assume that Mr. Northcutt's condition at the time of those visits satisfied the definition of asthma attack.  However, Listing 3.03(B) requires the occurrence of such attacks every two months or six times during a twelve-month period, and Mr. Northcutt does not point to, and the Court's own review does not reveal, any evidence that he experienced attacks that frequently.  Thus, Mr. Northcutt has failed to point to evidence that suggests that his condition might have met or medically equaled Listing 3.03(B).

### B.  Credibility

Next, Mr. Northcutt takes issue with the ALJ's credibility determination.  The ALJ found Mr. Northcutt's allegations regarding the extent of his symptoms "not entirely credible," noting that his inability to obtain consistent treatment and his "failure to follow his prescribed regiment detracts from his allegations regarding the severity and limiting nature of his severe problems." R. at 28.  Mr. Northcutt contends that the ALJ's credibility determination was flawed because "the ALJ failed to properly consider the fact that Northcutt has been unable to always follow his prescribed regimen, or obtain more regular treatment, because he does not have medical insurance."  Pl.'s Br. at 15.  Mr. Northcutt also argues that the ALJ was "playing doctor improperly, and then diminished Mr. Northcutt's credibility accordingly."  *Id.* at 13.

In making a credibility determination, an ALJ can consider infrequent treatment or failure to follow a treatment plan, but "must not draw any inferences about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care."  *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal quotation marks omitted); *see also Murphy v. Colvin*, 759 F.3d 811 (7th Cir. 2014) ("[A]n ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment.") (citing

SSR 96-7p)).  In the instant case, the ALJ's credibility determination was largely based on her observations regarding Mr. Northcutt's failure to receive medical care during certain time periods and his failure to follow certain prescribed treatments, yet the ALJ failed to question Mr. Northcutt as to why he did not comply with his medical treatment plan or acknowledge the evidence of record—including several notations in the medical records—that he did not have insurance at certain times and could not afford certain prescribed medications.  This was error and requires remand to permit the ALJ to determine and consider why Mr. Northcutt did not obtain certain medical treatment and comply with certain prescribed treatments.[2]

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED and REMANDED** for further proceedings consistent with this Entry.

SO ORDERED: 7/28/15

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

---

[2]The Commissioner asserts that "the ALJ noted that Plaintiff['s] credibility deteriorated due to his inconsistent statements," particularly that Mr. Northcutt "alleged he stopped working in March 2007 due to disabling impairments, [yet] the record reveals that he lost his job because he failed to follow his supervisor's orders."  Def. Br. at 9.  This is incorrect.  The ALJ did not find that Mr. Northcutt falsely claimed to have lost his job because of his disability.  Rather, the ALJ noted that Mr. Northcutt's alleged onset date was the date he stopped working at his last job and opined that this onset date was suspect because he did not seek treatment until almost a year later.  The ALJ reasoned that the fact that Mr. Northcutt admittedly lost his job for work performance reasons suggests that he was not forced to stop working because of his medical conditions and therefore was not disabled as of that date.  Mr. Northcutt did not falsely claim to have left his job because of his alleged disability, and the ALJ did not find that he did so.  In other words, the Commissioner falsely asserts that the ALJ found Mr. Northcutt lacked credibility because he affirmatively lied about the reason he lost his job, but the ALJ really inferred that Mr. Northcutt's alleged onset date was not credible because of his lack of medical treatment immediately after the onset date.